OPINION OF THE COURT
Leo F. Hayes, J.
Petitioner, Dwayne Machosky, has commenced this CPLR *211 article 78 proceeding seeking to have the procedures and determinations made by the respondent university declared invalid and to be reinstated as a student in good standing.
The petitioner, Dwayne Machosky, is a student at the State University of New York at Oswego. This petition arises out of disciplinary action taken by the university against the petitioner.
Machosky was enrolled at the State University of New York at Oswego (hereinafter referred to as SUNY Oswego) for the fall and spring semesters of 1988-1989. Respondent, Dr. Stephen Weber, is president of SUNY Oswego and the respondent, James R. Wassenaar, is vice-president for student services and students at SUNY Oswego. From mid-October 1988 to mid-November 1988, the petitioner’s roommate engaged in a number of phone calls to the main desk area at the Hart Hall Dormitory residence and to a student’s room within the dormitory. These phone calls, which may or may not have been made by other persons as well (respondents allege that calls were also made by the petitioner), were directed to a Mr. Kahan Sabio, a student and resident advisor at Hart Hall. Apparently these calls ceased in mid-November 1988. However, it was not until February 2, 1989 that Laura Bender, the Hart Hall Dormitory director, and Mr. Sabio filed a complaint with the campus judiciary committee alleging that the petitioner was involved with the harassing phone calls.
This behavior, if proven, would be a violation of section 43.C of the Code of Student Rights, Responsibilities and Conduct, which section prohibits "disruptive behavior, including but not limited to physical abuse, assault and/or battery, harassment, or threats to any person on college premises or at college-sponsored or supervised events”. Thereafter, in accordance with the college policies and procedures, the coordinator of the campus judicial system issued a letter dated February 14, 1989, which the petitioner alleges to have received on February 16 or 17, 1989 scheduling a hearing before the dean of students, James R. Wassenaar, on February 24, 1989.
Pursuant to the aforementioned college code, the petitioner was entitled to have an advisor present with him at the hearing. It is undisputed that the petitioner spoke with two advisors during the short interval between the time in which he received notice of the hearing and the date scheduled for the hearing, and that both advisors declined to serve or be present on the date of the hearing. On Thursday, February 23, *212 1989, the petitioner contacted the coordinator of the campus judicial system and requested an adjournment in order to obtain an advisor to attend the disciplinary hearing with him. The coordinator of the campus judicial system advised the petitioner that his inability to obtain an advisor was "not good enough for me” as a reason to obtain an adjournment for the administrative hearing. The hearing was conducted on the scheduled date, and on March 1, 1989, respondent James Wassenaar issued a letter decision wherein the vice-president for student services found that the petitioner participated in these allegedly harassing phone calls. The Hearing Officer determined that evidence presented in the form of a written deposition from a Mr. Anthony Giordano indicated that the petitioner had participated in the calls (an allegation which the petitioner vigorously denies). Giordano was not available for the hearing as he had previously left school and was away from the locale. Based on the finding of this violation the vice-president suspended Dwayne Machosky effective 24 hours after the date of receipt of the letter dated March 1, 1989 and extending through August 25, 1989. Thereafter, in accordance with the university code, the petitioner filed an appeal with the college president, who denied the appeal.
This petition was commenced by an order to show cause dated April 20, 1989, wherein Justice Wallace Van Auser, an Acting Supreme Court Justice, imposed a stay of the suspension, with the proviso that while the petitioner would be entitled to attend classes in which he had been enrolled for the spring semester, that he would, nevertheless, be prohibited from attending any social functions on the State University campus or any other function not directly related to academic endeavors and/or course work.
All of the foregoing is essentially undisputed by the parties.
There are several grounds upon which the petitioner is requesting that this court declare invalid the procedures and findings of the respondent. As and for a first ground, petitioner argues that his right to an advisor was violated by the respondent’s failure to adjourn the administrative hearing upon the petitioner’s request. Secondly, the petitioner asserts that his right to a prompt hearing of all disciplinary charges and to present evidence was violated by the respondent’s three-month delay in initiating disciplinary proceedings. Further, the petitioner claims that his right to a preliminary investigation was violated by the respondent’s failure to con *213 tact him prior to the filing of disciplinary charges. Lastly, he claims that the university’s appeals procedure was inadequate.
It should be noted that ordinarily such a petition would be referred directly to the Appellate Division, since there has been a complete hearing below. However, the petitioner’s claims are limited specifically to CPLR 7803 (3), not CPLR 7803 (4). Accordingly, and in compliance with CPLR 7804 (g), this court will pass upon the issues presented.
Turning to the first issue, it is claimed that the petitioner’s right to an advisor was violated by the respondent’s failure to adjourn the administrative hearing upon the petitioner’s request. Section 42 of the Code of Student Rights, Responsibilities and Conduct of the State University of New York College at Oswego provides, in relevant part, that
"the accused student has the right to be heard in his/her own behalf and to present evidence.
"The accused student has the right to be represented by an advisor of his/her choice. An advisor may appear in a student’s absence if the student does not wish to appear.”
Section 42 of the Code of Student Rights, Responsibilities and Conduct, relative to the disciplinary hearing process, provides that
"If the accused student requests a hearing, a time shall be set for that hearing after consultation with both parties, as soon as practicable, but not less than (4) class days nor more than (10) class days after the student’s selection of a hearing option. Alteration of the time limit shall occur only when the parties can demonstrate good cause. The student shall receive written notification of the hearing time and place at least (4) class days prior to the date of the hearing.
"The purpose of this section is to insure a prompt hearing of disciplinary charges, which is in the best interest of the accused student and the college. The college retains the right to establish a hearing date and to alter the hearing calendar for good cause, with notice. ” (Emphasis added.)
It appears from the record that the respondents had commenced an investigation of the telephone calls at some time prior to the cessation of the calls in mid-November. Thereafter, the respondent university continued its investigation but, nevertheless, failed to press any charges against the petitioner until some three months following the cessation of the phone calls and after the commencement of the spring semester. *214 Petitioner then received 10 days’ notice prior to the commencement of the hearing (in accordance with the code).
It appears that a good-faith effort was made by the petitioner to obtain an advisor and that he was unable to do so within the time allotted to him. Given the extreme prejudice, in the form of possible sanctions, which could be imposed upon the petitioner should the hearing result in an adverse determination, and given that there were no prior requests by petitioner for any adjournment or other abuse of the disciplinary process by the petitioner, the failure to afford the petitioner an opportunity to have an advisor present at the hearing was violative of his legal rights.
As the Court of Appeals noted in Tedeschi v Wagner Coll. (49 NY2d 652, 658 [1980]), "Suspension or expulsion for causes unrelated to academic achievement, however, involve determinations quite closely akin to the day-to-day work of the judiciary. Recognizing the present day importance of higher education to many, if not most, employment opportunities, the courts have, therefore, looked more closely at the actions of educational institutions in such matters.”
The United States Court of Appeals for the Fifth Circuit stated in its seminal decision in Dixon v Alabama State Bd. of Educ. (294 F2d 150, 157), "In the disciplining of college students there are no considerations of immediate danger to the public, or of peril to the national security, which should prevent the Board from exercising at least the fundamental principles of fairness by giving the accused students notice of the charges and an opportunity to be heard in their own defense. Indeed, the example set by the Board in failing so to do, if not corrected by the courts, can well break the spirits of the expelled students and others familiar with the injustice, and to do inestimable harm to their education.”
This same rationale has application to the underlying situation. While the university’s procedures did not mandate an adjournment to provide the petitioner with an opportunity to obtain an advisor and prepare a defense, nevertheless, given the severity of the potential punishment, and the relative ease with which such an adjournment could be granted, and the apparent "good cause” shown, the failure to grant such an adjournment was an abuse of discretion. It is essential that the university balance its own administrative needs and interests with fundamental concepts of due process. Inasmuch as the residence dormitory director and the cocomplainant, Mr. *215 Sabio, a resident advisor, waited three months within which to file a complaint, it certainly does not appear that any prejudice would have occurred to the university by granting the petitioner additional time within which to obtain an advisor to assist him in preparation for this hearing, which, without understatement, can be said, impacts upon the fulfillment of his academic career.
Secondly, petitioner alleges that his right to a prompt hearing of the disciplinary charges was violated by the respondent university’s three-month delay in initiating disciplinary charges. The disciplinary process and the complaint procedure in accordance with the university code are open to all members of the college community, be they students, staff, or faculty. At the outset, it appears obvious that the university generally cannot control the time frame within which complainants file their complaints. Nevertheless, the situation at hand appears somewhat unusual. The complainants in this matter are not simply undergraduate students. The cocomplainants in this case were the Hart Hall Dormitory director and a resident advisor. Clearly, as part of their roles within the campus community, these cocomplainants should have been well aware of university procedures and of the potential prejudice which can result from the failure to timely file a complaint. To a certain extent, they have a unity of interest with that of the named respondents as complainants and staff members of the respondent university. While it appears that the university technically complied with the requirements of the code in the scheduling of a hearing within the appropriate time after the receipt of the complaint, the delay in the filing of the complaint resulted in a significant prejudice to the petitioner. Other than the complainant himself, the two remaining witnesses with the most knowledge of the situation, Michael Trikouros and Anthony Giordano, had left the campus and the locale and were unable to appear as witnesses by the time and in the time frame that the hearing was scheduled. It is worth noting that prior to Mr. Giordano’s departure, the respondent had obtained a written report from Mr. Giordano which it used to great advantage in the disciplinary hearing, thereby preventing the petitioner from having an opportunity to cross-examine Mr. Giordano. Given the close interrelationship between the complainants and the respondent university, this delay was unreasonable and an abuse of discretion. As was noted by the court in Matter of Ryan v Hofstra Univ. (67 Misc 2d 651, 660-661) in a matter involving *216 a three-month delay in the scheduling of a disciplinary hearing,
"Implicit in the rules must be a requirement for the university to act with reasonable promptness on review applications. The testimony reflects without a doubt that the Hofstra administration delayed materially in scheduling a review hearing. * * *
"This delay works the imposition of a significant penalty which entirely by-passes the review procedure, and must be termed arbitrary and capricious, and abusive of discretion, on the part of the Hofstra administration.”
It is important to note that had the cocomplainants not been the dorm director and resident advisor, but rather had been students unaffiliated in an advisory or supervisory position with the university, that the behavior of the complainants in delaying the filing of a complaint would not be attributable to the respondent. However, these complainants, who were well aware of the calls during October and November and who in November and early December had conducted significant investigations on the matter, and who were apparently aware of the identity of the parties well before charges were filed, by their delay, whether intentionally or otherwise, deprived the petitioner of significant rights.
Petitioner also claims that his right to a preliminary investigation was violated by the respondent’s failure to contact petitioner prior to the filing of disciplinary charges. The relevant section of the disciplinary code provides that "any member of the college community may file charges against the student for alleged misconduct. The college will undertake, where feasible, a preliminary investigation to determine if the charges can be disposed of informally by mutual consent, without the initiation of disciplinary proceedings.” Petitioner has offered no evidence whatsoever that such a preliminary investigation and informal disposition of the charges would have been either feasible or appropriate. While petitioner’s precise role in the conduct complained of may be subject to dispute, the underlying conduct is not in dispute. The complainant was subject to dozens of phone calls over a two-month period. While it is not clear that there were any threats of any kind directed against the complainant, nevertheless, the calls were continuous, were invasive to his privacy, and by their shear number were harassing in nature. Accordingly, the petition, as to this ground, is dismissed.
*217 Likewise, I find petitioner’s argument as to the inadequacy of the appellate procedures to be without merit.
Finally, there is the question as to what steps should now be taken by this court. The suspension was to have occurred for the spring semester through August 24, 1989. The suspension was enforced for an approximate six-week period. Thereafter, the stay was signed which allowed the petitioner to attend classes. The petitioner was ineligible for a summer internship and its attendant credits as a result of this disciplinary proceeding. It also appears from the record that the petitioner was subject to criminal charges (petitioner apparently received an adjournment in contemplation of dismissal and was directed to perform 30 hours of community service). While the court has no knowledge of the petitioner’s grades for the spring semester, nevertheless, it is hard to believe that the grades were not adversely impacted as a result of his absence from campus for an extended period of time.
In light of this court’s finding that petitioner’s rights were violated by both the failure of the respondents to grant an adjournment and by the delay in the conduct of the hearing, and in light of the considerable punishment already endured by the petitioner, it does not appear that any useful purpose would be served to remand this matter back for a new hearing. Accordingly, the petition is granted on the aforementioned grounds. The university’s disciplinary charges are dismissed and the university is hereby directed to reinstate the petitioner as a student in good standing effective immediately.